IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA WAGERS, | : | |
| | : | CONSOLIDATED UNDER |
| Plaintiff, | : | MDL 875 |
| | : | |
| v. | : | |
| | : | |
| SGL CARBON, LLC, | : | E.D. PA CIVIL ACTION NO. |
| | : | 2:10-02916 |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                         APRIL 6, 2011

**I.   INTRODUCTION**

This is an asbestos personal injury case. Before the Court is the Motion for Summary Judgment of Defendant SGL Carbon, LLC ("SGL"). SGL is the successor to Great Lakes Carbon Corp. (Pl.'s Resp., doc. no. 17 at 2.) In 1976, SGL's Morgantown Carbon plant operated under the name Great Lakes Carbon Corp. SGL hired Siding, Inc. to perform work as an independent contractor at the Morgantown Carbon plant. Dutt Wagers, Jr., now deceased, was a Siding, Inc. employee. SGL argues that it did not owe Mr. Wagers a duty to warn about the dangers associated with asbestos.

Federal jurisdiction in this case is based on diversity of citizenship under 28 U.S.C. § 1332. Therefore, this Court

1

will apply North Carolina substantive law in deciding Defendant's Motion for Summary Judgment since all of Mr. Wagers' alleged exposures occurred in North Carolina. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); see also Guaranty Trust Co. v. York, 326 U.S. 99, 108 (1945).

**II. BACKGROUND**

Mr. Wagers worked as a laborer and then supervisor for Siding, Inc., an independent contractor hired by Defendant SGL Carbon, LLC ("SGL") in 1976 to install corrugated asbestos siding at SGL's Morgantown Carbon plant in North Carolina. In 1976, SGL extended building number 24 of its Morgantown Carbon plant. (Pl.'s Resp. at 2.) SGL contracted with Siding, Inc. to perform the siding and roof installation on building number 24. (Id. at 2-3.) There was no general contractor on this project. The contract between Siding, Inc. and SGL specified for the use of corrugated asbestos siding products. (Id. at 3.) Mr. Wagers performed work, cutting and applying asbestos siding materials at SGL's Morgantown Carbon plant from approximately September of 1976 until approximately January of 1977. (Id. at 5-6.) Mr. Wagers passed away due to mesothelioma on August 25, 2007. (Id. at 3.)

**III. DISCUSSION**

   A.   <u>Legal Standard for Summary Judgment</u>

When evaluating a motion for summary judgment, Federal Rule of Civil Procedure 56 provides that the Court must grant judgment in favor of the moving party when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact. . . ." Fed. R. Civ. P. 56(c)(2). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. <u>Id.</u> at 248-49. "In considering the evidence the court should draw all reasonable inferences against the moving party." <u>El v. SEPTA</u>, 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." <u>Conoshenti v. Pub. Serv. Elec. & Gas Co.</u>, 364 F.3d 135, 140 (3d Cir. 2004) (quoting <u>Singletary v. Pa. Dep't of Corr.</u>, 266 F.3d

3

186, 192 n.2 (3d Cir. 2001)). Once the moving party has discharged its burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

B. <u>North Carolina Premises Liability Law</u>

In <u>McCorkle v. North Point Chrysler Jeep, Inc.</u>, Defendant North Point Chrysler Jeep, Inc. entered into a contract with Landmark, where Landmark would serve as the general contractor for the construction of a new building on Defendant's property. 703 S.E.2d 750, 751 (N.C. Ct. App. 2010). Landmark hired Robey Painting as the painting subcontractor on the project and the plaintiff was employed by Robey Painting. <u>Id.</u> Plaintiff was injured while working on the project when a handrail, which was installed by the fabricator who supplied the handrail to Landmark, broke. <u>Id.</u> Plaintiff sued Defendant North Point Chrysler Jeep, Inc. alleging that "Defendant was negligent in failing to keep the construction site in reasonably safe condition." <u>Id.</u>

The court recognized that, "[i]t is well settled in North Carolina that an independent contractor and his employees who go upon the premises of an owner, at the owner's request are lawful visitors and are owed a duty of care." <u>Id.</u> at 752 (citing

4

Spivey v. Wilcox Co., 141 S.E.2d 808 (N.C. 1965) (other internal citations omitted)).

> The duty of due care includes "the obligation to exercise ordinary care to furnish reasonably protection against the consequences of *hidden dangers* known, or which ought to be known, to the proprietor and not to contractor or his servants." Wellmon v. Hickory Constr. Co., 362 S.E.2d 591, 593 (N.C. Ct. App. 1987) (quoting Deaton v. Bd. of Trustees of Elon College, 38 S.E.2d 561, 564-65 (N.C. 1946)). This duty also required a landowner, as well as a general contractor, to make a reasonable inspection to ascertain the existence of hidden dangers." Williams v. Store Co., 184 S.E. 496, 499 (N.C. 1936) (other internal citations omitted).

There is an exception to this general duty of due care in that premises owners do not owe a duty of due care to independent contractors as to the actual work undertaken by the independent contractor and its employees. 703 S.E.2d at 752-53 (citing Cook v. Morrison, 413 S.E.2d 922 (N.C. Ct. App. 1992)). "The oft-stated reason for the exception is that if a landowner relinquishes control and possession of property to a contractor, the duty of care, and the concomitant liability for breach of that duty, are also relinquished and should shift to the independent contractor who is exercising control and possession." 703 S.E.2d at 753 (internal citations omitted).

The court concluded that because Landmark, the general contractor, was in control of the construction site, defendant was not liable for plaintiff's injuries because it did not owe plaintiff a duty of reasonable care. 703 S.E.2d at 754. According

5

to the contract, Landmark was to supervise, direct, and inspect the work. Id. Landmark was also to take reasonable precautions for the safety of the employees. Id. The only evidence as to defendant's control over the construction site was that sometime prior to the accident, plaintiff saw one of defendant's executives on the stairway where he was injured. Id.

Defendant argues that the test applied in Hooper v. Pizzagalli Construction Co. is applicable to this case. 436 S.E.2d 145 (N.C. App. Ct. 1993). In Hooper, the plaintiffs were both employees of subcontractors. Id. at 147. Defendant Pizzagalli was the general contractor. Id. The court stated that, "[t]he Courts of North Carolina have long recognized that a general contractor is not liable for injuries sustained by a subcontractor's employees. Id. at 148 (citing Woodson, 407 S.E.2d 222). It is the duty of the subcontractor to provide its employees with a safe place to work. 436 S.E.2d at 148. The court recognized the exceptions to the general rule of non-liability when the contractor retains control over the subcontractor's work and when the work is inherently dangerous. Id. The general rule of non-liability of general contractors for injuries sustained by the employees of subcontractors does not apply in this case since Siding, Inc., Mr. Wagers' employer, was hired directly by SGL as an independent contractor and there was no general contractor.

In Cook, the North Carolina Court of Appeals recognized the general duty of due care that a premises owner owes to an independent contractor and the employees of the independent contractor. 413 S.E.2d at 926. The court noted that, "[t]hese general rules on the tort liability of owners and occupiers of land to invitees, however, do not apply to the actual work undertaken by independent contractors and their employees." Id.

> If, however, the activity is inherently dangerous and the owner or occupier of the land knows or should know of the circumstances creating the danger, then the owner or occupier of the land has the nondelegable duty to the independent contractor's employees 'to exercise due care to see that . . . [these employees are] provided a safe place in which to work and proper safeguards against any dangers as might be incident to the work [are taken].'

Id. (citing Woodson v. Rowland, 407 S.E.2d 222, 238 (N.C. 1991)). An activity is deemed inherently dangerous "if it can be performed safely provided certain precautions are taken, but will, in the ordinary course of events, cause injury to others if these precautions are omitted." Simmons v. North Carolina Dept. Of Transp., 296 S.E.2d 790, 793 (N.C. App. Ct. 1998). North Carolina courts have noted that, "[a]lthough the question as to whether a given activity is or is not inherently dangerous can be decided as a matter of law, this determination often must be left for the jury to consider in light of the particular conditions and circumstances of each case." Kinsey v. Spann, 553 S.E.2d

7

487, 492 (N.C. Ct. App. 2000) (citing Woodson, 407 S.E.2d at 236) (other internal citations omitted)). There is no universal distinction between which activities are inherently dangerous and which are not. Woodson, 407 S.E.2d at 235.

To prevail on an inherently dangerous activity claim against a premises owner, a plaintiff must show: (1) that the activity at issue is inherently dangerous; (2) that at the time of the injury, the employer knew or should have known that the activity was inherently dangerous; (3) that "the employer failed to take the necessary precautions to control the attendant risks;" and (4) that "this failure by the employer proximately caused injury to plaintiff." Kinsey, 553 S.E.2d at 492 (citing O'Carroll v. Texasgulf, Inc., 511 S.E.2d 313, 317-18 (N.C. Ct. App. 1999)).

The following activities have been held inherently dangerous as a matter of law in North Carolina: maintaining an open trench in a public area, blasting, and installing electrical wires. Woodson, 407 S.E.2d at 235-36 (citing Greer v. Callahan Constr. Co., 130 S.E. 179 (N.C. 1925); Guilford Realty & Ins. Co. v. Blythe Brothers, 131 S.E.2d 900 (N.C. 1963); Peter v. Carolina Cotton & Woolen Mills, Inc., 155 S.E. 867 (N.C. 1930)). On the other hand, North Carolina courts have held that sign erection and building

construction generally are not inherently dangerous activities. 407 S.E.2d at 236 (citing Brown v. Texas Co., 76 S.E.2d 45 (N.C. 1953); Vogh v. F.C. Geer Co., 88 S.E. 874 (N.C. 1916)).

North Carolina courts have not determined whether the installation of asbestos-containing products, specifically asbestos-containing siding, qualifies as an inherently dangerous activity as a matter of law. In Schenk v. HNA Holdings, Inc., the plaintiff, a pipefitter, was employed by Daniels Construction Co., who built Defendant's Celanese plant. 613 S.E.2d 503, 506 (N.C. Ct. App. 2005). In that case, the trial court submitted the question of whether using asbestos-containing materials for maintenance and construction was an inherently dangerous activity to the jury. Id. at 507. The jury returned a verdict against the defendant. Id. This decision was affirmed by the North Carolina Court of Appeals. Id.

In summary, under North Carolina law, a premises owner ordinarily owes a duty of due care to an independent contractor and the employees of that independent contractor to warn the independent contractors and its employees of hidden dangers known to the premises owner, but not to the independent contractor or its employees. However, there are two exceptions to this general duty of due care. First, a

premise owner owes no duty to an independent contractor or the employees of that independent contractor for the actual work undertaken by the independent contractor, meaning the work over which the independent contractor has control. Second, there is a further exception in that, even for the actual work undertaken by the independent contractor, a premise owner still owes a nondelegable duty of due care for work that is inherently dangerous.

    C.    <u>Analysis</u>

As a premises owner, SGL owes a general duty of due care to its independent contractors and the employees of those independent contractors. See <u>McCorkle</u>, 703 S.E.2d at 752-53. Defendant cites to <u>Hooper</u> as standing for the proposition that no duty was owed in this case. In <u>Hooper</u>, the North Carolina Court of Appeals stated that a general contractor ordinarily owes no duty of care to its subcontractor or the employees of that subcontractor. Since Siding, Inc. performed work as an independent contractor, the rule cited in <u>Hooper</u> is inapplicable in this case. In accordance with <u>McCorkle</u> and <u>Cook</u>, SGL owed a general duty of due care to Siding, Inc.

SGL, as the premises owner, owed a general duty of due care to warn Siding, Inc. of hidden dangers of which SGL knew, but Siding, Inc. and its employees were unaware. Defendant has presented evidence that in the early 1970's, Siding, Inc. held a

10

meeting of all field superintendents to train them on OSHA regulations about asbestos.  Therefore, Defendant has shown that Siding, Inc. knew of the dangers of asbestos.  Mr. Wagers testified that he was unaware of the dangers of asbestos until the 1980s when he was no longer working with corrugated asbestos siding.  Plaintiff has pointed to evidence of record that SGL specified for the use of corrugated asbestos siding for the work that Siding, Inc. performed at the Morgantown Carbon plant.  Plaintiff has also presented evidence that Defendant SGL's predecessor, Great Lakes Carbon, was involved in the Seventh Saranac Symposium and in the American Society for Testing and Materials "Committee C-16 on Thermal Insulating Materials," which both published information about the dangers of asbestos.

      The evidence of record shows that both Siding, Inc. and SGL were generally aware of the dangers of asbestos.  While it is unclear whether Siding, Inc. or SGL had superior knowledge about these dangers, it is clear that the dangers presented by asbestos exposure were not "hidden" from Siding, Inc.  Therefore, since a premises owner is liable only for dangers unknown to the independent contractor, but known to the premises owner, SGL did not breach the general duty of due care that it owed to Mr. Wagers since the dangers of asbestos were known to Siding, Inc. even if Mr. Wagers did not know about these dangers.

Defendant argues that even if SGL owed a duty to Mr. Wagers in this case, the "incident to work" or control exception absolves SGL of any liability. In McCorkle, the North Carolina Court of Appeals indicated that the incident to work exception was a way for a defendant to prove that, despite the fact that a general duty of due care was owed to the plaintiff, since the injury was incurred incident to the work performed by the independent contractor, the independent contractor and not the premises owner should be held liable. Thus, if the defendant breached no duty owed to the plaintiff, there would be no need to consider the "incident to work" exception. Therefore, this Court need not examine the "incident to work" exception since there were no hidden dangers in this case of which SGL had a duty to warn Mr. Wagers.

In Cook, the inherently dangerous exception was applied as a nondelegable duty that a premises owner owes to independent contractors who undertake inherently dangerous activities. Therefore, under these circumstances, despite the fact that SGL did not breach the general duty of due care it owed to Mr. Wagers, the Court must determine whether the installation of asbestos-containing siding is an inherently dangerous activity of which SGL had a duty to warn Mr. Wagers.

No North Carolina court has determined whether the use of asbestos-containing materials qualifies an as inherently

dangerous activity as a matter of law. The <u>Kinsey</u> court recognized that the determination of whether an activity qualifies as inherently dangerous is often a factual question which should be submitted to a jury. 553 S.E.2d at 492. In <u>Schenk</u>, the North Carolina Court of Appeals left the determination of whether asbestos containing materials are inherently dangerous to the jury. Therefore, in this case, the determination of whether the installation of corrugated asbestos siding is an inherently dangerous activity will similarly be left to a jury.

To prevail on this inherently dangerous activity claim, Plaintiff must also show that SGL knew or should have known that the installation of asbestos-containing siding is an inherently dangerous activity. As discussed above, Plaintiff has presented evidence that Defendant SGL's predecessor, Great Lakes Carbon, participated in organizations which published information about the dangers of asbestos. Also, Defendant specified that Siding, Inc. use asbestos-corrugated siding for the work that Siding, Inc. completed at the Morgantown Carbon plant. Defendant contends that SGL was unaware that asbestos presented a danger when used in the form of siding, however, Plaintiff has raised a genuine issue of material fact on this issue by presenting evidence that SGL knew or should have known of the dangers of asbestos and that it specified for the use of asbestos-containing

13

siding despite this knowledge.

Plaintiff has also presented evidence that SGL did not warn Siding, Inc. or its employees about the dangers of asbestos. Mr. Wagers' coworker, Robert Dillard, testified that Great Lakes Carbon did not provide the Siding, Inc. workers with any respiratory protection and that he did not recall seeing any warnings about the dangers of asbestos at Great Lakes Carbon. (Dillard Dep. at 30-31, 35.) Finally, through the expert testimony of Dr. Schwartz combined with the exposure testimony of industrial hygienist William Ewing, Plaintiff has raised a genuine issue of fact as to whether exposure to asbestos-containing siding at SGL's plant contributed to Mr. Wagers' development of mesothelioma. Accordingly, as there is a genuine issue of material fact as to whether the installation of asbestos-containing siding qualifies as an inherently dangerous activity, which SGL, as the premises owner, had a duty to warn Mr. Wagers about, Defendant's Motion for Summary Judgment will be denied.

An appropriate order follows.